WARDLAW, STATE BANK EXAMINER, v. PLANTERS' BANK OF CLARKSDALE et al.

[95 South. 135.   In Banc.   No. 22839.]

1. BANKS AND BANKING.   *Municipality entitled to guaranty certificate from state banking department for funds deposited in insolvent bank not qualified as a depository "secured."*

   Where public funds of a municipality are deposited in a bank which has not qualified as a depository, as provided in Chapter 98 of Hemingway's Code, this deposit is not "otherwise secured," as provided in section 3506, Hemingway's Code, and the municipality is entitled to a guaranty certificate from the state banking department, where the bank is being liquidated by this department.

2. MUNICIPAL CORPORATIONS.   *Has prior lien for deposit in defunct bank not qualified as depository.*

   The municipality is entitled to a priority of payment of its claim out of the assets of the bank, under section 2823, Hemingway's Code (section 3485, Code of 1906).

3. BANKS AND BANKING.   *Bank re-depositing county funds not entitled to priority of payment by insolvent bank in which funds deposited.*

   Where county officers deposits the money of the county in a bank which has not qualified as the county depository, and this bank, in accordance with an agreement with another bank, deposits part of the county money in the second bank and takes certificates of deposit therefor in its (the bank's) name, as between the two banks, the relation of bank and ordinary depositor exists, and the first bank is not entitled to priority of payment under section 2823, Hemingway's Code (Code 1906, section 3485), out of the assets of the second bank, which is being liquidated by the state banking department.

4. BANKS AND BANKING. *Bank re-depositing county funds in defunct bank entitled to guaranty certificate from state banking department.* The depositing bank under these facts is entitled to receive from the state banking department its guaranty certificate.

APPEAL from chancery court of Coahoma county.

HON. G. E. WILLIAMS, Chancellor.

Suits by the Planters' Bank of Clarksdale and the City of Clarksdale and others against S. W. Wardlaw, State Bank Examiner, in charge of the Delta Bank & Trust Company. From decrees for plaintiffs in each cause, defendant appeals. Affirmed in part, and modified and rendered in part.

*Watkins, Watkins & Eager,* for appellant.

Point Number 1: *The claims of appellees were "otherwise secured," and appellees were, therefore, not entitled to a guaranty certificate.* Section 3596 of Hemingway's Mississippi Code, being section 38 of the Act. We now proceed to a discussion of the question as to what is meant by "otherwise secured." And it is at this point that the point of diversion is reached with opposing counsel. We contend that the act means just what it says: "that if the deposit is otherwise secured it is not entitled to the benefit of the guaranty act; that if the depositor has any other kind of security than that afforded by the act itself, the depositor is 'otherwise secured.'"

It is conceded in this case that the appellees are secured by section 3485 of Hemingway's Code. These deposits were made in violation of law. The officers and persons making them had no right or authority under the law to make any such contract of deposit. The funds were accepted by the depository in violation of law; the depository accepted these deposits at its peril, knowing that the officers making the same were violating the law in so doing, and that a lien would be impressed upon the assets thereof for the payment of these deposits, and the priority of payment would be directed as against other depositors.

We respectfully submit that the term "otherwise secured" means just what it says. *Columbia Bank & Trust Company* v. *United States Fidelity & Guaranty Company* (Okla.), 126 Pac. 556.

The question was again presented to the supreme court of Oklahoma in the case of *Lovett* v. *Langford,* 145 Pac. 767. In that case, a state officer deposited money under the depository law in a state bank. The bank failed, and the officer filed a suit to have the deposit given the benefit of the guaranty act. The court held that the deposit was otherwise secured, and did not fall within the provision of the guaranty act.

The question was again examined by the supreme court of Oklahoma in the case of *United States Fidelity & Guaranty Co.* v. *State et al.,* 168 Pac. 234. *Fuller* v. *Aylesworth,* 75 Fed. 694, 21 C. C. A. 504. The court was required to construe rule 29 (3 Sup. Ct. XVI). We refer the court to the case of *Fuller* v. *Aylesworth* (C. C. A.), 75 Fed. 694, where the term "otherwise secured" is discussed. The latest case on the subject is that of *American State Bank* v. *Wilson, Bank Commissioner* (Kan.), 204 Pac. 709.

It is contended by appellees' counsel that section 3485 of Hemingway's Code of the state of Mississippi merely makes the claim a preference claim, and not a secured claim, but the court will look at the substance and not the shadow. The purpose of the statute, as construed by this court, was to impress a lien upon the assets of the bank for the payment of public funds. That is exactly what was done in the case of *Fogg, Tax Collector,* v. *Hebdon,* 32 So. 385, 80 Miss. 750. The same course was taken in *Metcalf* v. *Bank,* 41 So. 377, 89 Miss. 649; *Commercial Bank* v. *Hardy,* 53 So. 395, 97 Miss. 755; *Green* v. *Cole,* 54 So. 65, 98 Miss. 67; *Potter* v. *F. & D. Co.,* 101 Miss. 823, 58 So. 713.

The trouble about the position of appellees is that they insist upon adding something to the statute. Section 3596 of Hemingway's Code is complete in itself, and is clear and unambiguous. We respectfully submit that an exception

should not be grafted on an unambiguous statute. *Box* v. *Stanford,* 13 S. & M. 93; *Mellen Lumber Co.* v. *Industrial Commission* (Wis.), 36 A. & E. (Ann. Cas.) 997.

We further call the attention of the court to the fact that section 38 of the Guaranty Act, being section 3596 of Hemingway's Code, was adopted in practically the same language as the Kansas, Texas and Oklahoma acts, which act had been construed before the passage of the act in question by the Mississippi legislature. And it is generally held that where a statute is copied from another state, or from a foreign country, a construction of the statute prevailing therein will also be adopted. *Ingram* v. *Reagan,* 23 Miss. 213; *Botanical Medical College* v. *Atchinson,* 41 Miss. 188; *Marqueze* v. *Caldwell,* 48 Miss. 23; *Henry* v. *Henderson,* 103 Miss. 48; *Hamner* v. *Yazoo Delta Lumber Co.,* 100 Miss. 349.

We respectfully submit that appellees' deposits, if such they may be termed, were "otherwise secured," and that the chancellor committed error in awarding a guaranty certificate to the appellees.

Point Number 2: *Appellees' claim not a deposit within the meaning of the act.* We direct the attention of the court to the case of *Potter* v. *F. & D. Co.,* 101 Miss. 823, 58 So. 713, where this court held that the statute under consideration had no place and no functions to perform under circumstances where the public officers were authorized to make the deposit and the bank to receive it. We will not be willing to admit that appellees will not collect their full claim by reason of the priority allowed by the chancellor in the court below; but aside from that, the appellees were "otherwise secured." The relation of debtor and creditor never existed in the true sense between appellees and the Delta Bank & Trust Company. The Delta Bank & Trust Company was nothing in the world but a trustee under the law for the benefit of the holder of these public funds, and it would be inconsistent with the purpose of the guaranty system to hold it applicable to the facts and circumstances in this case.

*C. L. Hester* and *Flowers & Brown,* for appellant.

The question presented by these cases is: Does the state bank guaranty fund protect depositors of public funds?

As to the nature of public deposits and the relation created by the deposit between the bank and the owner of the funds. Section 3077 of the Code of 1892. The statute declares that public money is a trust fund when deposited in a bank, and is not liable to be taken by the general creditors of the officer or by the creditors of the depository. When the statute first appeared we had no selected public depositories.

The idea was to make of public money by whomsoever placed in a bank a trust fund which could be followed and taken in whatever form it might be found. The fund itself remained subject to recapture and any assets in which the money may have been invested could be taken by the beneficial owner of the trust funds. It could not be taken to pay claims of general creditors, whatever its form or however changed. *Fogg, Tax Collector, v. Hebdon,* 32 So. 385, 80 Miss. 750; Pom. Eq. Jr., sec. 420; *Knatchbull v. Hallett,* 13 Ch. Div. 696; *Central National Bank v. Mutual Life Ins. Co.,* 104 U. S. 54, 26 L. Ed. 693.

Judge CALHOON in *Metcalf v. Bank,* 41 So. 377, 89 Miss. 649, followed Judge TERRALL's lead in *Fogg v. Hebdon,* and said: "On the point of the deposit by the sheriff we decide that it was a trust fund, under Annotated Code 1892, section 3077, and entitled to priority of payment out of the assets of the bank." And both of the above cases were approved and used by Judge ANDERSON in *Commercial Bank v. Hardy,* 53 So. 395, 97 Miss. 755.

It will be noted that this is the first time the court said that the claim for trust funds deposited in a bank which has failed is a charge on all the assets of the bank. That decision gives additional meaning and a new meaning to the statute. Or at least it further develops the statute.

In *Green v. Cole,* 54 So. 65, 98 Miss. 67, Judge ANDERSON went a little further in the development of the statute and

131 Miss.—7

in making it furnish more complete protection for public deposits. It will be noted here that the court has treated this section 3485, as explained and developed, as furnishing and as intended to furnish protection for public depositors at the expense of all other depositors and creditors. That was the purpose of it. The statute was adopted and thus developed before the depository law or the banking law came into existence. The statute helps nobody but the public depositor. And Judge Cook says it creates extraordinary rights for the protection of the public and this at the expense of the ordinary depositor. *Potter* v. *Fidelity & Deposit Co.,* 101 Miss. 823, 58 So. 713.

The section, it will be noted, is declared by Judge MAYES to stand, "as security to the state." It gives to the state the right to subject the assets; treats the state not as a mere creditor and the bank as a debtor; puts the state or the public depositor in a separate and different class.

And this difference is then emphasized by the further discussion in the same opinion when the learned justice says: "But when the state itself disposes of its public funds, as is required by the depository laws, the relation of debtor and creditor is established between the state and the depository merely, and the state must make its money, in the event of the insolvency of the depository, out of its securities, and failing in this, it must take its place in the line of general creditors and share the assets *pro rata* with such creditors." And then it is said again that when the funds are placed by the state in the depository they are not trust funds. The officer has been authorized by law to make the deposit and the deposit thus made by him is just like the deposit made by an individual on his own account. The relation of debtor and creditor exists. The funds are no longer trust funds.

The bank is under no obligation to account for the particular funds, the deposit becomes a general deposit. The court further says: The use of the distinction so clearly made by Judge ROBERT MAYES in *Potter* v. *Fidelity & Deposit Co.,* supra, is illustrated by the facts in *Powell* v. *Tun-*

*ica County.* In *Fidelity & Deposit Co.* v. *Wilkinson,* 109 Miss. 879, 69 So. 865, Chief Justice SMITH deals to some extent with the principles above discussed.

In *Bank of Commerce* v. *Clark,* 114 Miss. 850, 75 So. 595, this court, through Judge HOLDEN, applied section 3485 to a new situation. It appeared in that case that Clark, the sheriff and tax collector had deposited money in the Bank of Commerce at Gulfport and had taken a bond from certain individuals to protect the deposit. It was insisted by the Bank of Commerce, in liquidation, that these funds were not trust funds since a bond was taken to protect them. The main contention, however, was that section 3485 of the Code of 1906, was repealed by the Banking Law of 1914. The court held section 3485 was in no wise impaired by chapter 124 of the Laws of 1914 and also held that the act of the sheriff and tax collector in taking a bond from individuals to protect the deposit was without authority of law and that the funds in the bank were trust funds protected by section 3485. And it was further held that the depository law when put in operation supersedes section 3485.

"The depository law of our state (Acts of 1908, chapter 96, as amended by Laws of 1910, chapter 224), when put in operation as provided therein, supersedes and annuls the security and protection of section 3485, Code of 1906, and to that extent supersedes the said Code section; but the provisions of no other statute affect or repeal section 3485, Code of 1906. *United States Fidelity & G. Co.* v. *First State Bank of Shaw,* 103 Miss. 91, 60 So. 47; *Powell* v. *Board of Supervisors,* 107 Miss. 410, 65 So. 699; Ann. Cas., 1916, B. 1262; *Potter* v. *F. & D. Co.,* 101 Miss. 823, 58 So. 713."

The court through Judge SYKES applied section 3485 again in *Bank of Commerce* v. *City of Gulfport,* 117 Miss. 591, 78 So. 519. In *Jourdan* v. *Bennett,* 119 Miss. 576, 81 So. 239, Judge SYKES again applied section 3485.

The Banking Act (chapter 124, Laws of 1914 and amendments) undertook to provide security for simple or

primary or common depositors. This is expressly held by
STEVENS, J., in *Anderson* v. *Bank of Newton*, 114 Miss. 81,
74 So. 682, 114 Miss. 854, and 855. See p. 424 of 109 Miss.

The taking of security under the depository law was
to be treated as additional security. The security already
possessed was that afforded by section 3485 as affording
security and collaterals or security bonds taken to qualify
a bank as a public depository was to be considered only
as additional security.

The conclusion of this court approved by all the judges
who have dealt with these statutes to the effect that the
banking act does not cover the subject dealt with by sec-
tion 3485 should furnish the answer to the question here
under discussion.

The protection provided by the Banking Act of 1914 and
amendments. This protection is a new kind. It is in the
nature of an innovation. At least it is entirely new in the
state of Mississippi. It still treats the ordinary depositor,
insofar as the assets of the bank are concerned, as a general
creditor. He gets no preference insofar as the assets of
the bank are to be applied. His protection comes from
the outside, created or built up under the provisions of
the Banking Act. It consists of two funds, one of them
being made up by collections from stockholders on their
double liability and the other being made up by the assess-
ments against the banks of the state for the benefit of the
guaranty fund. The guaranty fund is made up by assess-
ments, made from time to time during the year by the board
of bank examiners against the state banks on the basis of
their average deposits. This fund does not go into any
bank for the protection of its general creditors or for any
other purpose. It is purely a creation of the statute and
the fund is intended to protect and can be held to protect
only those persons or depositors who are clearly within the
intention of the law. The liability of stockholders is purely
statutory; the money collected from them can only be used
for the protection of the depositors clearly intended to be
embraced within the protective provisions of the act.

The original theory of section 3077 even as developed by the decisions of this court can logically extend only to assets of the bank. As we have pointed out above herein section 3077 of the Code of 1892, was on its face a legislative adoption of a general equity rule, a rule which allowed trust funds to be followed as long as they left spoor. In *Fogg* v. *Hebdon, supra,* Judge TERRAL perhaps had no idea as to the future development of the statute. He undertook to base his decision upon the ancient rule and to reach the assets by the use of it. Judge CALHOON does not appear to have had a clear vision of the future in *Metcalf* v. *Bank*. It remained to Judge ANDERSON to give to the statute its present full, extended interpretation. But even this large interpretation still claims kinship with the ancient rule and allows the indulgence of the presumption that the trust fund is still represented by the remaining assets of the closed bank. If a tax collector should deposit fifty thousand dollars in a bank today and the bank should close ten days hence and it was not a public depository for the fund, this public money would be charged against all the assets of the bank even including the bank building which might have been purchased and paid for fifty years ago. But certainly it would require a most radical departure, and overturning of rules, a disregard of precedent to say that this section 3485, being an enlargement of the old equity rule, could be carried on to fasten upon property that can in no way be considered part of the assets of the bank. To justify this would take something in the nature of a legislative mandate. It would be incongruous.

Opposing counsel lose sight of the fact that public funds are protected by two special acts of the legislature; acts dealing with nothing but public funds. Section 3485 deals specifically and exclusively with public funds; the several depository laws deal specifically and exclusively with public funds. All these special statutes dealing with public funds were made to protect and secure such funds. These acts dealing exclusively with this one subject were in effect when the banking law was passed and they are still in ef-

fect.   The operation of the two acts is in nowise limited by the banking law.   The banking law does not deal with public deposits.   The problem of protecting these had already been dealt with by the legislature and settled.   Chap‑ ter 124 of the Laws of 1914, did not have in view public deposits, but deposits that had not yet been provided for by the legislature.   The two subjects were well separated already in our laws and in our decisions.   It would be a strange thing indeed to say that as big a subject as the pro‑ tection of public deposits was intended to be covered with‑ out being mentioned in the banking law.   It certainly would be required by the interpreter of that law that the legisla‑ ture should have expressly included public deposits in or‑ der that it might be held that they are covered by the banking law since the legislature had given so much at‑ tention by special acts to the subject of protecting such deposits.

Counsel on the other side in the argument in the court below and, as far as we have seen, in their briefs in this court ignored the history of our legislation on the subject of bank deposits; ignored the fact that public deposits in their two possible categories have been specially dealt with and protected; ignored the well-recognized difference be‑ tween deposits made by parties having the right to contract with reference thereto and creating the relation of, debtor and creditor, and deposits made under circumstances where the law steps in and fixes the relation; ignored the im‑ portant announcements already made from this bench to the effect that section 3485 stands unhampered in its op‑ eration by subsequent statutes; ignored the decisions of this court to the effect that section 3485 was intended for the protection and security of public funds and that it still stands as such protection for all such funds as get out of the channel provided by law.

Counsel pick up this present law, discuss it, as if it were related to no other law, as if it had no history, as if there were no other statutes on the books.   They look solely at the words "not otherwise secured" and then proceed to

argue that public deposits are "not otherwise secured." But we could accept the challenge here and with confidence submit the case on the bare inquiry; are public deposits "otherwise secured?" *Barbieri* v. *Ramelli,* 84 Cal. 154; *Bank* v. *Stewart,* 78 Iowa 575, 6 L. R. A. 92; *Commercial Bank* v. *Hardy,* 53 So. 395.

At the time section 3077 was made a part of the Code of 1892 there was in progress important litigation in which public funds were being pursued under the equity rule protecting trust funds. It was held by the chancellor that there could be no recovery out of the assets of the failed bank as for trust funds unless the funds deposited could be traced into the assets sought to be subjected. The supreme court upheld this position. But the Greenville Bank had failed December 22, 1891. The supreme court through Judge COOPER sustained the chancellor and incidentally pointed out the insufficiency of the equity rule to furnish protection to the public deposit. 71 Miss. 260, 14 So. 84.

*Maynard, Fitzgerald & Venable,* for appellees.

The answer of the state banking department appears at record page five (5), but the answer of the state banking department admits that the city had no deposit, the sums mentioned, but denies that the same were not secured.

This denial is based upon the contention of the state banking department that as the law guaranteeing deposits, section 3596 of Hemingway's Code, provides as follows: "3596. What deposits are subject to guarantee—amount of same certified. All deposits, not otherwise secured, and all cashier's checks, certified checks, all sight exchange issued by banks operated under this law, shall be guaranteed by this act, etc."

That this means since public deposits, by virtue of section 2823, Hemingway's Code, are trust funds that they are in a manner secured, and that therefore, they would not come under the provisions of section 3596, *supra,* and are not deposits, "not otherwise secured;" in other words,

the banking department says since all public moneys are
secured by section 2823, Hemingway, in that they are
declared trust funds, they certainly cannot be unsecured
deposits.  *Bank of Commerce of Gulfport* v. *The City of
Gulfport,* 117 Miss. 591.

We do not understand why the state banking depart-
ment should take a position in the Gulfport case that the
city was entitled to a guaranty certificate and in the in-
stant case, that these depositors of public funds were not
entitled to a guaranty certificate.

It is obvious to our mind that 3596 meant to insure all
deposits which were not "otherwise secured."  This sec-
tion 3596 of Hemingway's Code is chapter 207 of the Laws
of 1916, and the court will notice that as this chapter 207
of the Laws of 1916 amends chapter 124 of the Laws of
1914, the act is made broader in the 1916 Laws, in that,
section 38 of the Laws of 1914, only provides "all deposits,
not otherwise secured, shall be guaranteed by this act;"
but section 38, chapter 207, Laws of 1916, is broader and
provides: "All deposits, not otherwise secured, and all
cashier's checks, certified checks, or sight exchange issued
by banks operated under this law shall be guaranteed by
this act."

It was evidently the intention of the legislature not to
narrow but to broaden the guarantee, and yet the state
banking department itself is here before this court in an
effort not to broaden but to narrow the effect of the law
because they say to this court, that since "public deposits
constitute a trust fund they are thereby secured funds and
secured funds are not guaranteed."  It reminds us of the
simple fallacious argument that was used in the elemen-
tary books of logic to prove that turkey was better than
heaven, for it is said: "Turkey is better than nothing.
Nothing is better than heaven, therefore, turkey is better
than heaven."

This court in the case of *Bank of Commerce* v. *Clark*
114 Miss. 850, has already announced that the Laws of
1914, chapter 124, section 38, as amended by Laws of 1916,

chapter 207, section 38, providing that all deposits not otherwise secured, etc., did not repeal or destroy the purpose of and protection afforded by the Code of 1906, section 3485 (Hemingway's Code, section 2823).

The following cases indubitably announce the law in this state that public funds are protected beyond all question of a doubt and are trust funds. *Fogg* v. *Bank,* 80 Miss. 750; *Green* v. *Cole,* 98 Miss. 67; *Potter* v. *Fidelity Co.,* 101 Miss. 823; *Powell* v. *Board of Supervisors,* 107 Miss. 410.

The present banking law was undoubtedly framed to throw the burden of bank failures on all of the rest of the banks of the state, and it is the duty of all of the banks to see that the banking department so conducts its business of examination and checking that it will be impossible for a bank in the state to fail disastrously; and if perchance a bank does fail, it is more the banking department's fault than otherwise for they have free access to the books and could correct any tendency to loan too much money or to have disastrous failures.

We submit that in the case of the *City of Clarksdale* v. *The Banking Department,* that the city is entitled to have issued to it certificates of guarantee under the law for the entire amount of one hundred, forty-six thousand, four hundred ninety-two dollars and two cents ($146,492.02) as none of these funds were secured in any way.

*Cook & Cook,* for appellee.

We submit that the court is confronted with a case that is simple of disposition. The sole question which was presented to the lower court, and which we anticipate will be presented here, is whether or not appellee is entitled to have issued to it guaranty certificates of deposit as provided by section 3594, Hemingway's Code. This question we conceive to be controlled by the provisions of section 3596.

It was insisted by appellant upon trial in the lower court that because of the fact that the deposit of appellee was

found to be a trust fund in accordance with section 2423, *supra,* that, therefore, these deposits were otherwise secured and for that reason appellee is not entitled to have its certificate of deposit issued.

To carry this contention to its logical conclusion would, we submit, create an anomaly in the law. The manifest purpose of section 2923, *supra,* was to throw a mantle of protection around the public funds and to provide in such way that upon the failure of banking institutions, public depositors having moneys therein would be entitled to priority of payment over common depositors.

Prior to the enactment of section 2823 of Hemingway's Code, the state had no priority over general creditors of an insolvent bank. *Shields* v *Thomas,* 71 Miss. 260, 14 So. 84, 42 Am. St. Rep. 458. At this time receivers of public moneys were not expressly authorized or were not authorized in any way to deposit public funds in any banking institution. In the eyes of the law they were individually responsible for the care of such funds.

Section 2823, in some ways, modified this evil. By it receivers of public moneys were at least released of criminal responsibility for depositing moneys in their hands in banking institutions. The legislature saw fit to provide that such moneys should constitute a trust fund and not be liable to be taken by the general creditors of the bank. This court, in a number of cases has construed this section. *Fogg* v. *Bank,* 80 Miss. 750, 32 So. 285; *Green* v. *Cole,* 98 Miss. 67, 54 So. 65; *Potter* v. *Fidelity Company,* 101 Miss. 823, 58 So. 713; *Powell* v. *Board of Supervisors,* 107 Miss. 410, 65 So. 499.

We shall not attempt to review these cases because we are sure that the court is entirely familiar with their holdings. We think it proper, however, to suggest that the trend and thought of all of these cases has been that by virtue of section 2923 a public depositor is entitled to a preference over general depositors. In other words the State, by its legislature, has created for itself a priority of payment. It is well to observe that at this time and before

the depository act of 1908 all depositors and creditors must necessarily look to the assets of the bank for payment. The law at that time provided for no other source from which a depositor might expect payment of his deposit.

The county depository act of 1908 provided a complete scheme for the protection of public moneys. We invite the courts consideration of the case of *Potter* v. *Fidelity Company*, supra, and point out that there the court discusses the question of priority of payment and points out very lucidly that section 2823 simply fixes the order in which creditors shall be paid. Subsequently to the Potter case there arose the case of *Powell* v. *Tunica County*, 107 Miss. 410. Again we see the court construing the law in such way as to give every protection to public moneys.

So we come to the case under consideration, the question being whether or not, because the appellee is entitled to claim protection of section 2823, it is also entitled to come within the provisions of the Banking Act. It is to be observed that the Banking Act provides that the banking department, through its properly constituted agents, shall take charge of the assets of the bank and proceed to wind up its affairs. He shall immediately issue to each depositor a certificate of deposit and shall realize upon the assets of the bank and pay all funds so collected in dividends to the creditors; next he shall certify to the state treasurer the balance due on guarantee deposits, if any. The decree of the court in this case provides that the bank examiner in charge shall apply the proceeds of the assets of the bank first to the payment of the claims for public money, such holding following the provisions of section 2823. Next the court holds that the appellee is guaranteed by the banking act for the balance due it. Appellants say not. It is argued that payment on public moneys shall stop there and go no further.

As we have pointed out before, that up until the depository law of 1908, the law contemplated no other source of payment than the assets of the insolvent bank. It then provided for deposits to be secured by surety bonds so that

at the enactment of the Banking Act of 1914 a great many deposits, we might even say in every case in which the law was fully complied with by the officers, were secured by means of solvent surety bonds. So that a depositor of public moneys could procure his deposit immediately upon the insolvency of the bank. We submit that this is the situation which the legislature intended to provide for when it used the words "deposits not otherwise secured."

The Century Dictionary defines "secure" as follows: "Secure—To make sure of payment, as by a bond, surety, etc; warrant or guarantee against loss; as, to secure a debt by mortgage; to secure a creditor."

To our minds the word secure means something in addition to that which an ordinary creditor would have. If the counsel's contention is correct then every depositor is secured because every depositor has exactly the same right to look to the assets of the bank that appellee has. The statute simply fixes the order of priority.

It would be a strange departure from the several holdings of this court for the court to uphold the contention of counsel so that depositors of public moneys must look solely to the assets of an insolvent bank, whereas the general depositors are guaranteed by an act of legislature.

Upon the whole we earnestly submit that this case should be affirmed.

SYKES, J., delivered the opinion of the court.

The Delta Bank & Trust Company, a banking corporation of this state, domiciled at Clarksdale, where it had been conducting a general banking business, suspended business and was taken in charge by the state board of bank examiners. At this time the city of Clarksdale had on deposit in this bank over one hundred and forty-six thousand dollars, as evidenced by various different accounts with the bank, notwithstanding the bank had not qualified as a municipal depository, as provided in chapter 98 of Hemingway's Code.

At this time the Planters'. Bank of Clarksdale had on deposit in this bank certain accounts designated as Planters' Bank account No. 1, Planters' Bank account No. 2, Planters' Bank sheriff's account, the aggregate of these deposits being over seventy-three thousand dollars.

The city of Clarksdale and the Planters' Bank petitioned the chancery court to have the state board of bank examiners issue to each in accordance with section 36 of chapter 124, Laws of 1914, guaranty certificates of deposit for these amounts. Each further asked that, by reason of the public nature of the funds on deposit, each be allowed a priority of payment in preference to other depositors of the bank, as provided by section 2823, Hemingway's Code (section 3485, Code of 1906). In each cause the chancellor decreed that each was entitled to priority of payment over other depositors as provided in section 2823, Hemingway's Code (section 3485, Code of 1906), and further decreed that the state banking department issue to each its guaranty certificates in accordance with the prayers of the petition. These two causes were tried by agreement in the chancery court, and though separate decrees were entered in favor of the city of Clarksdale and the Planters' Bank, the causes are presented here in one record. From these decrees the state banking department prosecutes this appeal.

The appellant presents two contentions to this court as to why these decrees are erroneous: First, that where public funds are deposited in a bank the relation of trustee and *cestui que trust* exists instead of that of bank and depositor; and, second, that these trust funds are otherwise secured, namely by section 2823, Hemingway's Code (section 3485, Code of 1906), and consequently are not guaranteed under the banking law. The particular section of the Banking Act relied upon by the appellants is section 3596, Hemingway's Code. The material part of this section is as follows:

"All deposits not otherwise secured. . . . shall be guaranteed by this act," etc.

A further contention is made that these public funds so deposited are secured by the respective bonds of the municipal and county officers who handle these funds.

In the City of Clarksdale case, because of an equal division of the members of the court, the decree must be affirmed. Because of this division I will not undertake to give the reasons of the differences of opinion among us. Judges ANDERSON, COOK, and ETHRIDGE are of the opinion that under section 2823, Hemingway's Code (section 3485, Code of 1906), these deposits are secured, and therefore the state banking department should not have been decreed to issue its certificate of deposit to the city. Judges HOLDEN, SMITH, and I are of the opinion that section 2823, Hemingway's Code (section 3485, Code of 1906), is not such security, and that the decree of the chancellor is correct. Judge ETHRIDGE alone is of the opinion that the bonds of these county officers constitute such security for these moneys as takes these deposits out of section 3596 of Hemingway's Code, and are therefore secured deposits.

In the Planters' Bank Case, the record shows that it had become the successful bidder for the deposit of county funds but failed to qualify as county depository; that the county moneys were deposited in this bank with the understanding among the banks of Clarksdale that the Planters' Bank would deposit in the others a certain per cent. of county moneys; that in pursuance of this agreement these funds were deposited by the Planters' Bank in the Delta Bank. All of us are of the opinion that, as between the Planters' Bank and the state banking department, in charge of the affairs of the Delta Bank, the Planters' Bank was merely an ordinary depositor in the Delta Bank; that as such depositor it is entitled to this guaranty certificate for the amount of this deposit, but that it is not entitled to the priority of payment over other depositors, as is provided in section 2823, Hemingway's Code (section 3485, Code of 1906).

The decree in favor of the Planters' Bank will be modified in this court to this extent.

Affirmed as to city of Clarksdale; modified and decree here in favor of Planters' Bank.

*Affirmed in part.*
*Modified and rendered in part.*